Argued February 6, affirmed April 2, 1973

HARRELL, *Respondent, v.* AMES, *Appellant.*
508 P2d 211

*Frank H. Hilton, Jr.,* Portland, argued the cause for appellant. With him on the brief were Hutchinson,

Schwab, Burdick & Hilton, Portland, and Dwight L. Schwab, Portland.

*Paul W. Haviland,* Medford, argued the cause for respondent. With him on the brief were Haviland, deSchweinitz & Stark, and Allan B. deSchweinitz, Medford.

Before O'Connell, Chief Justice, and McAllister, Denecke, Tongue, Howell and Bryson, Justices.

TONGUE, J.

This is an action for personal injuries sustained when plaintiff's car was hit head-on by a drunken driver. The primary issue on this appeal is whether a jury verdict for $25,000 in punitive damages was proper. Defendant does not deny liability for plaintiff's injuries and has already paid the jury verdict for $50,000 in general damages and $20,000 in special damages. We affirm.

This tragedy occurred on New Year's Eve, December 31, 1969, near Brookings, in Curry County. Defendant and her husband started early in preparations for that occasion. At about 5:00 or 5:30 p.m., according to her testimony, she met him after work at a tavern. They remained there about 30 minutes, during which she had two "tall V.O.s and water."

After going home for her husband to change clothes, they went on to a cocktail party. They remained there between 30 and 40 minutes, during which defendant had three more "tall V.O.s and water."

After leaving the cocktail party defendant's husband left her to "have a drink" with a friend of his. After some time defendant went to look for him. Not finding him, she returned to the same tavern. She

remained there "fifteen or twenty minutes," during which she had two more drinks. Thus, defendant admitted to a total of at least seven drinks during the evening and prior to 9:40 p.m., the approximate time of the accident.

Defendant then left the tavern, got in her automobile, and started to drive home. There was testimony that on the way, and just before the accident, she was driving at a speed of between 60 and 70 miles per hour, was "swerving back and forth, and she was on both sides of the road." Defendant, however, did not admit this. The "designated" speed in that area was 40 miles per hour.

Meanwhile, plaintiff was leaving the "Pizza Parlor" and had "just pulled out onto the highway" in his automobile and "got straightened up" when, according to his testimony, defendant's car "came across over on my side of the road and hit me head-on" at a speed of between 60 and 70 miles per hour. The state police officer, as well as an eye witness, also verified that the accident occurred on plaintiff's side of the highway. His car was "totalled."

Immediately after the accident defendant went in to the "Pizza Parlor" and had a cup of coffee. A state police officer then read her a "Miranda card," placed her under arrest, and took her to the Brookings police station. According to his testimony, she had a "smell of alcoholic beverage on her" and he asked her to "perform some routine tests." In one test, when asked to pick up a coin on the floor with both feet on the floor, she picked up the coin and then "fell over backwards."

Defendant was then taken from Brookings to Gold Beach, where she was given a breathalyzer test

at 11:07 p.m., approximately one and one-half hours after the accident. According to the evidence, the result of that test was "point one four." At that time ORS 483.642 provided that a .14 blood alcohol level was less than the level required to create a disputable presumption that a person was then under the influence of intoxicating liquor, although sufficient to constitute indirect evidence of intoxication. (ORS 483.642 has since been amended to lower the blood alcohol level from .15 to .10 as sufficient to create such a presumption. Oregon Laws 1971, ch 313, § 1, p 452.)

The state police officer also testified to the opinion that defendant was intoxicated. An employee of the tavern testified that in her opinion defendant was not intoxicated when she left the tavern just before the accident. Defendant, however, pleaded guilty to the charge of driving while under the influence of intoxicating liquor.

Defendant contends that it was error for the trial judge to refuse to withdraw from the jury the issue of punitive damages and that under such a state of facts the jury could not properly award punitive damages. It is also suggested that awards of punitive damages are not proper in automobile accident cases, including cases involving driving while intoxicated. In addition, it is suggested that an award of punitive damages is not proper in any case in which a criminal penalty is also available.

After carefully re-examining the cases and other authorities on these questions we again reaffirm the position of this court as most recently stated in *Dorn v. Wilmarth*, 254 Or 236, 458 P2d 942 (1969), in which we held that a jury can properly award punitive damages against a drunken driver in an automobile

personal injury case. In reaching that result we said (at pp 239-241):

> "This court has long approved the award of punitive damages in appropriate cases to punish the defendant and to thus deter him and all others from like conduct. * * * [Citations omitted]
>
> "* * * * *
>
> "Although this court has used a variety of terms to describe conduct justifying punitive damages it has consistently held that such damages are proper to deter wanton misconduct. In *Day v. Holland*, supra, the court said:
>
>> "* * * [W]here a tort is committed with a bad motive, or so recklessly as to imply a disregard of social obligations, and generally when the defendant appears to have done the act wantonly, maliciously, or wickedly, the jury may, in their discretion, give exemplary damages. * * *' 15 Or at 469.
>
> "The above statement has been quoted in several later cases and in many other cases conduct warranting punitive damages has been described as wanton. * * *
>
> "* * * * *
>
> "Wantonness has been generally equated with recklessness, * * *."

In support of these propositions we then cited (at pp 240-42) many previous decisions by this court, including *Noe v. Kaiser Foundation Hosp.*, 248 Or 420, 425, 435 P2d 306 (1967), as well as text authorities, including McCormick on Damages 280, § 79 (1935); Prosser on Torts (3d ed 1964) 9, § 2; and 4 Restatement 554, Torts § 908, among other authorities.

We then concluded in *Dorn* (at p 242) as follows:

> "We think the conduct of one who drives a car

after voluntarily drinking to excess is best classified as wanton or reckless. * * *

"* * * * * *

"Driving a vehicle while under the influence of intoxicating liquor is a crime punishable by imprisonment in jail 'for not more than one year, or by fine of not more than $1,000, or both.' ORS 483.992 (2). We hold that an award of punitive damages is proper as a deterrent to the conduct proscribed by the above statute. * * *"

Again, we supported that holding by citing previous decisions to the same effect by this and other courts.[①] Since our decision in *Dorn* other courts have also so held. Among others, see *Focht v. Rabada,* 217 Pa Super 35, 268 A2d 157, 160 (1970); *Svejcara v. Whitman,* 82 NM 739, 487 P2d 167, 168 (1971); and *Walczak v. Healy,* — Del Super —, 280 A2d 728, 730 (1971). See also *Wheeler v. Cain,* 62 Tenn App 126, 459 SW2d 618 (1970); Note, 7 Wake Forest L Rev 528, 531 (1971); Comment, 46 Va L Rev 1036, 1047 (1960); Comment, 46 Iowa L Rev 645 (1961); Annot., 3 ALR2d 212 (1949, Supp 1971); and Annot., 62 ALR2d 813, 819 (1958). Upon examination of these authorities it appears that a majority of the courts are in accord with this view.

■■ Although it has been contended that an award of punitive damages is not proper when a criminal penalty is available, this court in *Dorn* (at p 242) ex-

---

[①] It is suggested by defendant that our decision in *Dorn v. Wilmarth,* 254 Or 236, 458 P2d 942 (1969), is to be distinguished on its facts in that it appears from the record in that case that defendant was not only intoxicated, but was a hit-and-run driver. That additional fact, however, was neither mentioned nor relied upon in our decision in *Dorn.* Defendant also says that the evidence of drinking was more flagrant in *Dorn.* We find no basis for any substantial distinction between the two cases on that issue.

pressly held that an award of punitive damages is proper in such a case as this "as a deterrent to the conduct proscribed by" the statute making it a crime to drive a vehicle while under the influence of intoxicating liquor (ORS 483.992). The decisions by other courts affirming awards of punitive damages in drunken driving cases also support this view. To the same effect, see McCormick on Damages 292, § 82; Oleck, Damages to Persons and Property (rev ed 1961) 543, § 270; 4 Restatement 554, Torts § 908, Comment a; Note, 7 Wake Forest L Rev 528, 531 (1971); and Annot., 3 ALR2d 212 (1949, Supp 1971).[8]

Indeed, the fact of common knowledge that the drinking driver is the cause of so many of the more serious automobile accidents is strong evidence in itself to support the need for all possible means of deterring persons from driving automobiles after drinking, including exposure to awards of punitive damages in the event of accidents.

It may be debatable whether either awards of punitive damages or the imposition of criminal penalties will effectively deter persons from driving after drinking.[9] However, in the absence of a showing of substantial evidence to the contrary, we are not pre-

---

[8] It should also be noted, as stated in Comment, 46 Va L Rev 1036, 1047 (1960):

"* * * the violation of a statute is not sufficient *per se* to allow an award, whether or not the statute carries a criminal penalty, since the violation of a statute by itself does not necessarily indicate sufficient wantonness. However, violation of a statute may be considered as evidence of wantonness, wilfulness or recklessness."

[9] See Cramton, Driver Behavior and Legal Sanctions: A Study of Deterrence, 67 Mich L Rev 421, 445 (1969). See also Comment, 41 NYU L Rev 1158 (1966); Comment, 46 Va L Rev 1036 at 1049 (1960); and Comment, 46 Iowa L Rev 645, 650 (1961).

pared to hold that law enforcement officials and courts, who have a heavy responsibility in this area, are wrong in their present apparent assumption that both criminal penalties and awards of punitive damages may have at least some deterrent effect in dealing with this serious problem.[①] We are also not aware of any good reasons why punitive damages should not have as much deterrent effect upon this type of wanton and reckless conduct as upon other types of conduct in which awards of punitive damages are traditionally approved by the courts.

According to Prosser, Law of Torts (4th ed 1971) 11, § 2, after discussing the arguments for and against punitive damages: "* * * they are an established part of our legal system, and there is no indication of any present desire or tendency to abandon them." If any conduct is a "sufficiently aggravated violation of societal interests to justify the sanctions of punitive damages as a preventative measure," to use the test as stated in *Noe* (at p 425), one who undertakes to drive an automobile after voluntarily drinking to excess can properly be found by a jury to satisfy that test.

For these reasons, we hold that the trial court did not err in submitting to the jury the issue of punitive damages in this case.

■■ Defendant also contends that both the original instruction given on punitive damages and the further instruction given to the jury on that subject were in error. Upon examining these instructions, however, we find that they were not improper. The second in-

---

[①] For general discussion of problem, see Hodel, The Doctrine of Exemplary Damages in Oregon, 44 Or L Rev 175 (1965).

struction sufficiently informed the jury that in order for the jury to award punitive damages against a defendant who was driving under the influence of intoxicating liquor it must find that the defendant was guilty of wanton misconduct, which was defined as "conduct amounting to a deliberate disregard of the rights of others or a reckless indifference to such rights." Although the instruction did not expressly say that "driving under the influence" was not of itself a sufficient basis for punitive damages, as contended by defendant, this was quite clearly implied.[⊛]

■ Finally, defendant contends that "manifest error was committed by counsel for plaintiff in his closing argument." Because, however, no objection was made by defendant at that time, nor any motion for a mistrial, we decline to consider that assignment of error, which also fails to satisfy the requirements of Rule 2.35 of the Rules of Procedure of this court.

The verdict of the jury and the judgment of the trial court is affirmed.

O'CONNELL, C. J., specially concurring.

For the reasons stated in my dissent in *McElwain v. Georgia-Pacific,* 245 Or 247, 264, 421 P2d 957, 965 (1966), I am of the opinion that punitive damages should not be imposed under the circumstances of this case. Inasmuch as this court has previously decided otherwise, I concur in the result.

---

[⊛] Cf. Comment, 46 Va L Rev 1036, 1048 (1960).